UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Present: The Honorable    James V. Selna, US District Court Judge

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** [IN CHAMBERS] Order Regarding Motion for Preliminary Approval of Settlement Agreement

Plaintiffs Felipe Ybarra and Cesario Serrato ("Plaintiffs") filed an unopposed motion for preliminary approval of a Settlement Agreement with Defendants Board of Trustees of Supplemental Income Trust Fund, Richard Barbour, Rome A. Aloise, Keith Fleming, Carlos Borba, and Clark Ritchey (together—"Defendants"). (Mot., Docket No. 94-1.)

For the following reasons, the Court **grants** preliminary approval of the Settlement Agreement.

## I. Background

This case involves claims of breaches of fiduciary duty of the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), brought by Plaintiffs on behalf of themselves and participants in the defined contribution 401(k) retirement plan known as the Supplemental Income 401(k) Plan (the "Plan"). The Plan is a multi-employer defined contribution retirement plan for union members. (FAC, Docket No. 50 ¶ 1.) As a multi-employer retirement plan, the Plan is regulated under ERISA, 29 U.S.C. §§ 1001, et seq. The Board of Trustees of Supplemental Income Trust Fund is the sponsor of the Plan. (Id. ¶ 3.) The other Defendants are current members of the Board of Trustees. (Id. ¶¶ 18–23.) Defendants are fiduciaries of the Plan. (Id. ¶ 25.) Plaintiffs are participants in the Plan and bring this lawsuit individually and as representatives of participants and beneficiaries of the Plan. (Id. ¶¶ 7, 10-12.) Plan participants are employees covered under a written collective bargaining agreement between their

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

employers and a union that has been accepted for participation by the Supplemental Income Trust Fund. (Id. ¶ 16.) Plan participants contribute to their individual accounts through payroll deductions. (Id.) As of December 2016, the Plan had 27,178 participants and $921,556,147 in assets. (Id. ¶ 17.)

Plaintiffs claim that Defendants breached their fiduciary duties by causing the Plan to pay excessive recordkeeping and administrative costs and offering mutual funds with excessive operating costs when identical lower cost share classes were available.

Plaintiffs filed their putative class action complaint in November 2017. (Complaint, Dkt. No. 1.) Plaintiffs have since amended their complaint, and the First Amended Complaint ("FAC") is now the operative complaint. (FAC, Dkt. No. 50.)

The parties attended private mediation with Robert Meyer of JAMS, after which the parties were unable to come to an agreement. (Mot., Dkt. No. 94-1 at 7.) Plaintiffs' claims survived following two motions to dismiss filed by Defendants. (Id.) Plaintiffs deposed Defendant Keith Fleming, served and responded to written discovery, reviewed more than 20,000 pages of documents, conducted research, and filed two motions to compel. (Id.)

Plaintiff seeks an Order that (1) grants preliminary settlement approval; (2) certifies the proposed class for settlement purposes; (3) approves the manner and form of providing notice to the class; (4) appoints Andrew Stolper, Jason M. Frank ("Frank"), and Scott H. Sims of Frank Sims & Stolper LLP, and Paul R. Wood ("Wood") of Franklin D. Azar &Associates, P.C. as class counsel; (5) appoints Atticus Administration, LLC ("Atticus") as the Settlement Administrator; and (6) establishes a timetable for final settlement approval. (Id.)

### A. Summary of the Settlement

#### 1. The Proposed Settlement Class

Pursuant to the Settlement Agreement, the proposed settlement class consists of "persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased person who participated in the Plan at any time during the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Class Period, and/or, Alternate Payees, in the case of a person subject to a [Qualified Domestic Relations Order ("QDRO")] who participated in the Plan at any time. (Id.) The "Class Period" runs from December 1, 2011, through December 31, 2018." (Id. ¶ 2.15.)

### 2. Settlement Amount & Injunctive Relief

"The Settlement is an insurance policy limits settlement and includes significant injunctive relief.[1] The Settlement creates a non-reversionary common fund of approximately $8.75 million, which is the full amount remaining under Defendants' 'burning limits' fiduciary liability policy" (the "Gross Settlement Amount"). (Mot., Dkt. No. 94-1 at 6.)

The "Net Settlement Amount" is the Gross Settlement Amount minus the Court-approved Class Representative Case Contribution Award, attorney's fees and costs, and Settlement Administration Costs from which individual settlement payments are made to Class Members. (Settlement Agreement, Dkt. No. 94-1, Ex. A ¶ 2.34.)

"Plaintiffs estimate that the *average* payment to each Class member, after attorney's fees, costs and Settlement Administration expenses, will be approximately $140.00." (Frank Decl., Dkt. No. 94-2 ¶ 14.)

In addition, within the calendar year 2019 (or additional time as reasonably necessary), the Plan's fiduciaries shall engage an experienced independent consultant to conduct a request for proposals ("RFP") for a service provider to provide recordkeeping and administrative services to the Plan. (Settlement Agreement, Dkt. No. 94-1, Ex. A, ¶ 10.1.) The Plan's fiduciaries will select a service provider after reviewing the RFP responses. (Id.)

---

[1] "A 'policy limits settlement' is a settlement in which the parties agree that the monetary amount of the settlement will include the full amount of money remaining within the coverage limits of the defendant's insurance policy that applies to the action. When, as here, the insurance policy is also being used to pay for the defendant's defense costs, it is described as a 'burning limits' policy because the amount available for settlement is being reduced throughout the litigation." (Mot., Dkt. No. 94-1 at 6, n.1.) See Settlement Agreement, Dkt. No. 94-1, Ex. A ¶ 2.29.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

### 3. Case Contribution Award

Class Counsel intends to seek a Case Contribution Award not to exceed the amount of $5,000 for each Class Representative, which will be paid from the Gross Settlement Amount. (Id. ¶ 7.2.)

### 4. Attorneys' Fees and Costs

Class counsel intends to request 30% of the Gross Settlement Amount, which Plaintiffs represent "will be less than 25% of the total benefits obtained in the Settlement (i.e., the Gross Settlement amount plus the injunctive relief valued at over $3 million.)" for attorney's fees. (Mot., Dkt. No. 94-1 at 13.)

### 5. Administrative Expenses

The proposed Settlement Agreement appears to be silent regarding the amount to be paid to the Settlement Administrator; however, the revised Notices indicate that "[t]he Settlement Administrator has agreed to cap its costs at $79,041.00 and the Plan's recordkeeper has agreed to cap its costs at $25,000." (Response, Dkt. No. 96, Ex. A at 5.) The Settlement Agreement provides that "Administrative Expenses" includes all fees, expenses, and costs associated with providing Settlement Notice to the Class, all related tax expenses, all expenses and costs associated with the calculations pursuant to the Plan of Allocation, all fees and expenses of the Settlement Administrator, all fees and expenses paid to the Plan's recordkeeper, and all fees and expenses paid to the Independent Fiduciary. (Settlement Agreement, Dkt. No. 94-1, Ex. A ¶ 2.3.)

### 6. Calculation of Settlement Payments

The proposed Settlement Agreement provides that "[t]he proportion of the settlement allocated to each Class Member shall be calculated, in general, as the sum of quarter-end account balances of a Class Member during the Class Period ["Total Balance"] divided by the sum of the quarter-end annual account balances of all Class Members during the Class Period," which will indicate the Class Member's "Entitlement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Percentage."[2] (Id. ¶ 6.4.) "The Settlement Administrator shall next multiply each Class Member's Entitlement Percentage by the Net Settlement Amount, with the product representing the Entitlement Amount. (Entitlement Percentage x Net Settlement Amount = Entitlement Amount)." (Id.) "The Entitlement Amount for each Current Participant as of the distribution date will be deposited into the Class Member's Plan account and shall be treated as additional earnings." (Id.)

Current Participants will receive a credit for the settlement amount in their active account for the Plan. (Id. ¶ 6.5.2.) "Former Participants shall receive their settlement payments in the form of tax-qualified rollovers to an individual retirement account or other eligible retirement plan" if they postmark a Former Participant Claim Form at least 45 days prior to the date of the Fairness Hearing. (Id.) If a Former Participant Claim Form is not submitted by a Former Participant, that individual will receive the settlement payment directly by check. (Id. ¶ 6.6.) "[I]n the case of ambiguity or uncertainty," the check will be sent "to the address of such Former Participant as determined by the Settlement Administrator using commercially reasonable means." (Id.)

Class Members who qualify as "Current Participants," but who no longer have a balance of greater than $0 in their account ("Active Account"), will receive settlement payments in the same manner as Former Participants for purposes of receiving distributions. (Id. ¶¶ 6.5.1, 6.5.6.)

Once 28 days has elapsed following the end of the "Settlement Period," or one year after the effective date of the Settlement, any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs and taxes, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan that

---

[2] "The reason for linking the Settlement payments to the amount invested by each Class Member is that revenue sharing resulted in Class Members with larger account balances paying more in administrative and recordkeeping expenses than Class Members with lower account balances. Under a revenue sharing arrangement, the plan administrator/ recordkeeper is compensated indirectly rather than directly. That occurs because the plan's fiduciaries agree to a percentage of the management fees paid by each plan participant to the mutual fund manager will be shared with the plan administrator/recordkeeper. Thus, those with higher account balance pay more in management fees and more to the plan administrator/recordkeeper." (Frank Decl., Dkt. No. 94-2 ¶ 12.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
|---|---|---|---|
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

would otherwise be charged to the Plan's participants." (Id. ¶ 6.11.)

### 7. Notice

The Notice Plan requires direct first-class mail notice to Class Members. (Id. ¶ 2.48.) The Settlement Administrator will also post a copy of the Settlement Notice on the Settlement Website created for purposes of this settlement, which it will operate: www.SIP401ksettlement.com. (Id. ¶ 12.2.) The Settlement Website will include copies of the FAC, "the Settlement Agreement and its exhibits, the Settlement Notices to the Current and Former Participants, Plaintiffs' Motion for Final Approval, the Class Representative's Motion for Attorneys' Fees and Costs, the Former Participant Claim Form, any Court orders related to the Settlement Agreement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties." (Id.) Plan's Recordkeeper will provide contact information to the Settlement Administrator. (Id. ¶ 2.47.)

### 8. No Opt-Out Process

The Settlement Agreement does not provide a manner for Class Members to opt-out. (Class Notice, Dkt. No. 94-1, Ex. 2 at 6.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) requires court approval for class-action settlements. Fed. R. Civ. P. 23(e). When the parties reach a settlement agreement before class certification, a court uses a two-step process to approve a class-action settlement. Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003). First, the court must certify the proposed settlement class. Id. Second, the court must determine whether the proposed settlement is fundamentally fair, adequate, and reasonable. Id.

## III. DISCUSSION

**A. Preliminary Certification of the Proposed Settlement Class**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 17-2091JVS(Ex)                                    Date   May 22, 2019

Title    Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al.

**1.    The Proposed Settlement Class Meets the Requirements Under Fed. R. Civ. Pro. 23(a).**

Rule 23(a) imposes four prerequisites for class actions: (1) the class is so numerous that a joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and (4) the representative parties will fairly and adequately protect the interests of the class (adequacy). Fed. R. Civ. P. 23(a); United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO v. ConocoPhillips Co., 593 F.3d 802, 806 (9th Cir. 2010).

### a.   Numerosity

Under Rule 23(a)(1), a class must be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Because this requirement is not tied to a fixed numerical threshold, a court needs to examine the specific facts of each case. Rannis v. Recchia, 380 Fed. App'x 646, 651 (9th Cir. 2010). Typically, courts have found that the numerosity requirement is satisfied when the proposed class includes at least forty members. Id.

Here, the Plan's recordkeeper has indicated that this Settlement Class covers approximately 40,000 persons. (Frank Decl., Dkt. No. 94-2 ¶ 11.) Accordingly, the Court finds that joinder of so many individual members is impracticable.

### b.   Commonality

Rule 23(a)(2) requires that there are common questions of law or fact. Fed. R. Civ. P. 23(a)(2). However, to satisfy this rule, all questions of fact and law do not need to be common. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998). For instance,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

a class meets the commonality requirement if members share the same legal issues but have different factual foundations. Id. In addition, commonality is satisfied if members of the class share a common core of facts but have different legal remedies. Id.

Plaintiffs assert that the class claims are based on the same theory because they allege that Defendants maintained an inadequate fiduciary process that affected all Class Members. (Mot., Dkt. No. 94-1 at 16.) Specifically, Plaintiffs indicate that common questions for resolution include "which Plan fiduciaries are liable for the remedies provided by 29 U.S.C. § 1109(a); whether the Plan fiduciaries breached their fiduciary duties to the Plan; what losses the Plan suffered as a result of each breach of fiduciary duty; and what Plan-wide equitable and other relief the Court should impose in light of Defendants' alleged breaches." (Id. at 16–17.) Since Plaintiffs have demonstrated that there are common issues with respect to the alleged breach of fiduciary duties, and Defendants have not opposed commonality for purposes of this Settlement Agreement, the Court finds that the proposed settlement class meets the commonality requirement.

### c. Typicality

Rule 23(a)(3) requires that the claims or defenses of the representative parties are typical of the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) has a permissive standard: the representative claims are typical if they are reasonably comparable to the claims of the absent class members; substantial identicalness between the claims is not required. Hanlon, 150 F.3d at 1020. The test for typicality is (1) whether other members have a similar injury, (2) whether the action is based on conduct that is not unique to the named plaintiffs, and (3) whether the same course of conduct has injured other class members. Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992).

Here, the claims brought by Plaintiff are typical of the claims of Class Members, who were also participants in or beneficiaries of the Plan during the Class Period. The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

claims made by Plaintiff meet the typicality requirement because Defendants allegedly "failed to use the Plan's bargaining power to leverage and obtain lower recordkeeping and administrative fees or take any or adequate action to monitor, evaluate, or reduce such fees." (Mot., Dkt. No. 94-1 at 17.) Thus, all claims are based on the same underlying legal theory and the same alleged injury to Plaintiffs and other Class Members.

### d. Adequacy

Rule 23(a)(4) requires that a representative party fairly and adequately protects the interest of the class. Fed. R. Civ. P. 23(a)(4). Representation is fair and adequate when (1) the representative plaintiffs and counsel have no conflicts of interest with other class members and (2) representative plaintiffs and counsel will prosecute the action vigorously on behalf of the class. Staton, 327 F.3d at 957.

Plaintiffs represent that there are no conflicts of interest between themselves and the Class. (Ybarra Decl., Dkt. No. 94-5 ¶ 3; Serrato Decl., Dkt. No. 94-6 ¶ 3.) Class counsel has provided declarations indicating that they are experienced at litigating class actions and have vigorously litigated this case, resulting in the proposed Settlement Agreement. (Frank Decl., Dkt. No. 94-2 ¶¶ 2-8; Wood Decl., Dkt. No. 94-3 ¶¶ 3-7.) Accordingly, the Court finds that the adequacy requirement has been met.

### 2. The Proposed Settlement Class Also Meets the Requirements Under Federal Rule of Civil Procedure 23(b)(1).

Because the proposed settlement class satisfied the prerequisites under Rule 23(a), the Court must now consider whether it also satisfies Rule 23(b)(1), and based on the following analysis, the Court finds that it does.

Most ERISA class action cases are certified under Rule 23(b)(1). See, e.g., Kanawi, 254 F.R.D. at 111; Simpson, 231 F.R.D. at 396. Rule 23(b)(1) provides certification where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1). "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." Kanawi, 254 F.R.D. at 111.

Here, the proposed Settlement Class purports to satisfy Rule 23(b)(1)(A). According to the Plan's recordkeeper, there are approximately 40,000 Class Members, which amounts to 40,000 potential plaintiffs who could individually file suit for damages arising from the same conduct, which risks "inconsistent and varying" adjudications resulting in "incompatible standards of conduct" for Defendants. See Alvidres v. Countrywide Fin. Corp., No. CV-07-5810, 2008 WL 1766927 (C.D. Cal. 2008). In addition, Plaintiffs seek Plan-wide injunctive relief and money to be credited toward their Plan accounts, such that there could be opposing adjudications with respect to the appropriate manner in which the Plan administration would continue moving forward. Given this risk, the proposed Settlement Class appears to have satisfied the requirements of Rule 23(b)(1)(A).

**B.      Preliminary Approval of the Proposed Class Settlement**

**1.      The Fairness Factors Support Settlement Approval**

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable." Staton, 327 F.3d at 959. For this analysis, a court typically considers the following factors: (1) strength of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and the stage of the proceedings; (6) experience and views of counsel; (7) presence of a governmental participant; and (8) reaction of the class members to the proposed settlement.  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

### a. Strength of the Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

Class Counsel indicate their belief that the terms of the Settlement Agreement are fair and in the best interest of the Class in light of the facts and circumstances of the case, as well as the risk of delay and uncertainty associated with litigation, the vigorous defenses asserted by Defendants, and the nature of the "burning limits," policy, which could lead to any settlement recovery to dwindle as Defendants' litigation costs increase. (Mot., Docket No. 94-1 at 22–23.)  In addition, while Plaintiffs believe that they were charged excessive fees for the Plan participation, Defendants dispute that they breached fiduciary duties because a multi-employer 401(k) plan "differs in terms of administration from a single-employer plan." (Frank Decl., Dkt. No. 94-2, Ex. 2 at 6:12-8:12.)  Thus, given potential differences between multi-employer and single-employer plans, and the potential for class decertification along the way, Plaintiffs' success is uncertain such that Plaintiffs would face risk in continuing to litigate.

### b. Amount Offered in the Proposed Settlement

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (quoting Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)).  As a result, district courts should not judge the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators." In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 453 (C.D. Cal. 2014) (quoting Officers for Justice, 688

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

F.2d at 625). Instead, courts should consider the settlement in conjunction with "factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." Id.

Plaintiff asserts that the value of recovery for Plaintiffs in the Settlement Agreement weighs in favor of preliminary approval because "Plaintiffs obtained the full approximately $8.75 million remaining on Defendants' insurance policy *and* injunctive relief requiring an independent third-party to conduct the first request for proposal for recordkeeping and administrative services for the Plan in over 15 years." (Mot., Dkt. No. 94-1 at 24.) Since Plaintiffs could risk losing on the merits and recovering less than this amount should litigation continue, the Court finds that this factor weighs in favor of approval.

### c. Extent of Discovery Completed and the Stage of the Proceedings

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case. The more the discovery [is] completed, the more likely it is that the parties have 'a clear view of the strengths and weaknesses of their cases.'" In re Toys R Us, 295 F.R.D. at 454 (C.D. Cal. 2014) (internal quotations omitted) (quoting Young v. Polo Retail, LLC, 2007 WL 951821, No. C-o2-4546 VRW, at *4 (N.D. Cal. Mar. 28, 2007)). Likewise, mediation suggests that the parties know their relative strengths and weaknesses. See id. at 455.

Plaintiffs assert that this factor weighs in favor of preliminary approval because Defendants produced over 20,000 documents for Plaintiffs' review, and Class Counsel took a deposition. Moreover, Plaintiffs point out that this amount of discovery is significant, particularly in light of the nature of the proposed settlement, in which "[e]very additional hour spent litigating the case erodes the ability of the Class to recover if successful on the merits." (Mot., Dkt. No. 94-1 at 24.)

The Court agrees. Although some discovery remains, the parties have engaged in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

an appropriate amount of discovery at this stage of the proceedings and mediation, suggesting that the settlement is fair, reasonable, and adequate.

### d.     Experience and Views of Counsel

Both parties in this action were represented by competent counsel. Defendants retained Morgan Lewis and Brockius LLP, while Plaintiff was represented by attorneys experienced in ERISA class actions. (Frank Decl., Dkt. No. 94-2 ¶¶ 2-8.)  Therefore, this factor also supports preliminary approval.

In sum, the fairness factors weigh in favor of approval.

### 2.     **No Evidence of Collusion Exists.**

When a settlement agreement is formed before formal class certification, simply considering the fairness factors alone is insufficient. Bluetooth, 654 F.3d at 946.  Courts also need to examine whether the settlement is a result of collusion among the parties. Id. at 947.  When examining whether collusion has occurred, a court needs to look for subtle signs of self-interest.  Id.  In Bluetooth, the Ninth Circuit identified three signs: (1) class counsel receives a disproportionate distribution of the settlement; (2) the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate from class funds without objection by the defendant; and (3) the parties arrange for unearned attorneys' fees to revert to defendants rather than to the class fund.  Id.

There are potential warning signs here.  First, the Proposed Settlement may provide disproportionate distribution to Class Counsel.  The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon, 150 F.3d at 1029; see also Bluetooth, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure.").

Here, the Proposed Settlement Agreement provides that Class Counsel will apply

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

to the Court for attorneys' fees of 30% of the Gross Settlement Amount. (Mot., Dkt. No. 94-1 at 13.) Therefore, the attorneys' fees exceed the Ninth Circuit's benchmark. But "[t]he benchmark percentage should be adjusted, or replaced with a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990). The Court requires that Class Counsel's fee motion include a lodestar showing to assess the reasonableness of the fees requested. The Court expects that when counsel makes their separate fee motion, they will adequately support their request for fees and litigation expenses with detailed evidence. The Court notes that the request is only approximately 25% of the settlement value when one factors in the equitable relief.

A "clear sailing" provision is also present. The proposed Settlement Agreement provides that Defendants agree not to oppose the requested attorneys' fees. (Settlement Agreement, Dkt. No. 94-1, Ex. A ¶ 7.1.) This kind of "clear sailing" agreement requires the Court to exercise a "heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class." Bluetooth, 654 F.3d at 947. However, the Ninth Circuit has noted that "the inference of collusion drawn from a clear sailing provision is reduced when the agreement lacks a reversionary or 'kicker provision.'" Asghari v. Volkswagen Grp. of Am., Inc., No. CV 13-02529 MM (VBKx), 2015 WL 12732462, at *32 (C.D. Cal. May 29, 2015) (citing Bluetooth, 654 F.3d at 949). Here, there is no "kicker provision," as the attorneys' fees are awarded from the Gross Fund Value with no provision that any fees not awarded will revert back to Defendants. Therefore, despite the clear sailing provision, the absence of a "kicker provision" in the Proposed Settlement reduces the likelihood that Class Counsel and Defendants colluded to confer benefits on each other at the expense of Class Members. Accordingly, this provision does not give the Court cause for concern.

Additionally, the fact that negotiations were serious in nature and the parties appeared to be well-informed further points to an absence of collusion. The parties reached the Proposed Settlement Agreement after a mediation and motion practice including Defendants' continued efforts to dismiss the case. Moreover, the role of the mediator is a significant factor in concluding that there was no collusion, particularly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

since the Settlement Agreement is also subject to the approval of Newport Trust Company, an Independent Fiduciary.[1]

In sum, the Court is convinced that the Proposed Settlement Agreement is the product of serious, informed, non-collusive negotiations.

### 3.    Class Representative Contribution Award

Courts have discretion to issue incentive awards to class representatives. Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). The awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. An unreasonable incentive award may indicate that a settlement was reached through fraud of collusion. Staton, 327 F.3d at 975.

Courts evaluate incentive awards relative to named plaintiff's efforts, considering "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Id. at 977 (alterations in original) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts also compare the incentive awards to the total settlement by looking at "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015) (quoting Staton, 327 F.3d at 977).

Here, the Proposed Settlement provides Plaintiffs with an incentive award of

---

[1] The Court recognizes that the applicable regulations require an independent fiduciary to review the settlement agreement. See 68 Fed. Red. 75,632, as amended. Plaintiffs' counsel represents that "[g]iven that this is a policy-limit settlement the [p]arties believe there is a very low risk of independent fiduciary rejection." (Response, Dkt. No. 96 at 2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

$5,000. (Settlement Agreement, Dkt. No. 94-1, Ex. A ¶ 7.2.) The $5,000 comprises a relatively insignificant amount of the approximately $8.75 million Gross Fund Value, which is much lower than what some courts have found excessive. See, e.g., Sandoval v. Tharaldson Emp. Mgmt., Inc., No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that plaintiff's request for an award constituting one percent of the settlement fund was excessive). Class counsel has also indicated that there are approximately 40,000 Class Members and an average recovery of $140.00.

Consequently, this term of the Proposed Settlement appears reasonable provided that before final approval of the incentive award, Plaintiffs submit evidence that they spent time or effort assisting in the prosecution of the action. See Vandervort v. Balboa Capital Corp., 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014).

### 4. The Proposed Settlement Falls Within the Range of Possible Approval.

Finally, "[p]reliminary approval of a settlement and notice to the class is appropriate if 'the proposed settlement . . . . falls within the range of possible approval.'" Cruz v. Sky Chefs, Inc., 2014 WL 2089938, at *7 (N.D. Cal. May 19, 2014) (quoting In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). To determine whether a settlement falls within the range of possible approval, courts consider (1) substantive fairness and adequacy and (2) plaintiffs' expected recovery balanced against the value of the settlement offer. Tableware, 484 F. Supp. 2d at 1080.

Here, the Proposed Settlement amount appears to fall within the range of possible approval, especially because it offers the maximum potential recovery of the insurance limits. Any further litigation will only result in a dwindling recovery, even if the Plaintiffs are successful; thus, the expected recovery may ultimately be less than the value of the settlement offer.

### 5. Undistributed Net Settlement Funds

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

The Settlement Agreement provides that any Net Settlement Amount remaining one year after final settlement approval "shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan that would otherwise be charged to the Plan's participants." (Settlement Agreement, Dkt. No. 94-1, Ex. A ¶ 6.11.) Prior to granting final approval, the Court would seek greater clarification on how the deductions for the payments from any Net Settlement Amount would be reflected as credits toward Plan participants' payments of administrative fees and expenses of the Plan.

**C.     Notice Plan**

Class notices for 23(b)(1) classes are governed by Rule 23(c)(2)(A), which provides that "the court may direct appropriate notice to the class." The Advisory Committee Notes specify the following:

> The present rule expressly requires notice only in actions certified under Rule 23(b)(3). Members of classes certified under Rules 23(b)(1) or (b)(2) have interests that may deserve protection by notice.
>
> The authority to direct notice to class members in a (b)(1) or (b)(2) class action should be exercised with care. For several reasons, there may be less need for notice than in a (b)(3) class action. There is no right to request exclusion from a (b)(1) or (b)(2) class. The characteristics of the class may reduce the need for formal notice. The cost of providing notice, moreover, could easily cripple actions that do not seek damages. The court may decide not to direct notice after balancing the risk that notice costs may deter the pursuit of class relief against the benefits of notice.
>
> When the court does direct certification notice in a (b)(1) or (b)(2) class action, the discretion and flexibility established by subdivision (c)(2)(A) extend to the method of giving notice.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

> Notice facilitates the opportunity to participate. Notice calculated to reach a significant number of class members often will protect the interests of all. Informal methods may prove effective. A simple posting in a place visited by many class members, directing attention to a source of more detailed information, may suffice. The court should consider the costs of notice in relation to the probable reach of inexpensive methods.

Fed. R. Civ. P. 23 Advisory Committee Notes–2003 Amendment.

    The notice is being directly mailed via first class mail to all Class Members. (Settlement Agreement, Docket No. 94-1, Ex. A ¶.)  The Court finds that the notice is generally clear and adequately conveys relevant information regarding the Proposed Settlement and provides clear instructions regarding the objection procedures with several minor exceptions.

    First, the proposed Class Notice explains Plaintiff's theory of the case related to the breach of fiduciary duties. (Class Notices, Dkt. Nos. 94-1, Ex. 2 at 2, 94-1, Ex. 3 at 2.) The section likewise explains that Defendants deny liability. (Id.) Second, the Notices plainly state who is a member of the certified class at the top of the first page on each. (Id. at 1.) Third, the Notices explain what it means to object to the settlement. (Notices, Ex. 2 at 5–6; Ex. 3 at 6–7.) In addition, the Notices indicate that the Settlement requires a release of all claims related to the FAC. (Id., Ex. 2 at 4; Ex. 3 at 5.) The Notice also indicates that Class Counsel are the attorneys for the Class Members, but that they still may enter an appearance through an attorney. (Ex. 2 at 5, Ex. 3 at 6.)

    Prior to the hearing, the Court requested clarification with regard to the requirement to include the Former Participant Claim Form in order to object. In addition, the Court invited the parties to address notice with respect to the Current Participants who no longer have active accounts and thus are to be treated as Former Participants for purposes of distribution of the proceeds. Class Counsel submitted a revised copy of the Notice removing the requirement to submit the Former Participant Claim Form in order to object. (Response, Dkt. No. 96 at 2, Ex. A at 6.) In addition, Class Counsel indicated

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091JVS(Ex) | Date | May 22, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

that individuals who qualify as Current Participants but no longer have active accounts "will be sent the notice designed for Former Participants so they can elect how they would like their settlement payment distributed." (Id. at 3.)

The Court agrees generally with the proposed schedule for notice with the exception of the period to object. Class Members should have **60 days** rather than 45 days from the mailing of the notice to do so, and the proposed scheduling dates should be modified to reflect this. Class Counsel has modified the Notices to reflect this change. (Id. at 4.)

### IV. CONCLUSION

For the foregoing reasons, the motion for preliminary approval of class action settlement is **granted**.

**IT IS SO ORDERED.**

| | : | 0 |
|---|---|---|
| **Initials of Preparer** | lmb | |