JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Sharon Seffens |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Andrew Stolper<br>Scott Sims | Sean McMahan (telephonically) |

**Proceedings:** 1. Plaintiffs' Motion for Attorneys' Fees, Costs and Incentive Award [101]
2. Plaintiffs' Unopposed Motion for Final Approval of Class Action Settlement, Attorneys' Fees and Costs and Incentive Award [105]

**Cause is called for hearing and counsel make their appearances. The Court's tentative ruling is issued. Court and counsel confer. The Court GRANTS the Plaintiffs' motions and rules in accordance with the tentative ruling as follows:**

Before the Court are two motions.

First, Plaintiffs Felipe Ybarra and Cesario Serrato ("Plaintiffs") filed an unopposed motion for final approval of a Settlement Agreement with Defendants Board of Trustees of Supplemental Income Trust Fund, Richard Barbour, Rome A. Aloise, Keith Fleming, Carlos Borba, and Clark Ritchey (together—"Defendants"). (Mot., Dkt. No. 105-1.)

Second, Plaintiffs filed an unopposed motion for attorneys' fees, costs, and an incentive award. (Mot., Dkt. No. 101-1.)

For the following reasons, the Court **grants** both motions.

**I. BACKGROUND**

The background of this cases is well-known to the parties and detailed in the

JS - 6

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Court's order granting preliminary approval. (See Order, Dkt. No. 98.) The Court restates the underlying facts and procedural background as necessary to support its order.

This case involves claims of breaches of fiduciary duty of the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), brought by Plaintiffs on behalf of themselves and participants in the defined contribution 401(k) retirement plan known as the Supplemental Income 401(k) Plan (the "Plan"). The Plan is a multi-employer defined contribution retirement plan for union members. (First Amended Complaint, Dkt. No. 50 ¶ 1.) As a multi-employer retirement plan, the Plan is regulated under ERISA, 29 U.S.C. §§ 1001, et seq. The Board of Trustees of Supplemental Income Trust Fund is the sponsor of the Plan. (Id. ¶ 3.) The other Defendants are current members of the Board of Trustees. (Id. ¶¶ 18–23.) Defendants are fiduciaries of the Plan. (Id. ¶ 25.)

Plaintiffs are participants in the Plan and bring this lawsuit individually and as representatives of participants and beneficiaries of the Plan. (Id. ¶¶ 7, 10-12.) Plan participants are employees covered under a written collective bargaining agreement between their employers and a union that has been accepted for participation by the Supplemental Income Trust Fund. (Id. ¶ 16.) Plan participants contribute to their individual accounts through payroll deductions. (Id.) As of December 2016, the Plan had 27,178 participants and $921,556,147 in assets. (Id. ¶ 17.)

Plaintiffs claim that Defendants breached their fiduciary duties by causing the Plan to pay excessive record keeping and administrative costs and offering mutual funds with excessive operating costs when identical lower cost share classes were available.

Plaintiffs filed their putative class action complaint in November 2017. (Complaint, Dkt. No. 1.) Plaintiffs amended their complaint; the First Amended Complaint ("FAC") is now the operative complaint. (FAC, Dkt. No. 50.)

The parties attended private mediation with Robert Meyer of JAMS, after which the parties were unable to come to an agreement. (Mot., Dkt. No. 105-1 at 8.) Plaintiffs' claims survived following two motions to dismiss filed by Defendants. (Id. at 9.) Plaintiffs deposed Defendant Keith Fleming, served and responded to written discovery,

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

reviewed more than 20,000 pages of documents, conducted research, and filed two motions to compel. (Id. at 8.)

### A. Summary of the Settlement

#### 1. The Settlement Class

Pursuant to the Settlement Agreement, the settlement class consists of "persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased person who participated in the Plan at any time during the Class Period, and/or, Alternate Payees, in the case of a person subject to a [Qualified Domestic Relations Order ("QDRO")] who participated in the Plan at any time. (Id. at 14.) The "Class Period" runs from December 1, 2011, through December 31, 2018." (Id.)

Atticus Administration, LLC ("Atticus"), the Settlement Administrator, mailed the Settlement Notice in English via first class mail to 43,118 Class Members. (Longley Decl., Dkt. No. 105-4 ¶ 5.)

#### 2. Settlement Amount & Injunctive Relief

"The Settlement is an insurance policy limits settlement and includes significant injunctive relief.[1] The Settlement creates a non-reversionary common fund of approximately $8.75 million, which is the full amount remaining under Defendants'

---

[1] "A 'policy limits settlement' is a settlement in which the parties agree that the monetary amount of the settlement will include the full amount of money remaining within the coverage limits of the defendant's insurance policy that applies to the action. When, as here, the insurance policy is also being used to pay for the defendant's defense costs, it is described as a 'burning limits' policy because the amount available for settlement is being reduced throughout the litigation." (Dkt. No. 105-2 ¶ 10, n.1.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

'burning limits' fiduciary liability policy" (the "Gross Settlement Amount"). (Frank Decl., Dkt. No. 105-2 ¶ 10.)

The "Net Settlement Amount" is the Gross Settlement Amount minus the Court-approved Class Representative Case Contribution Award, attorney's fees and costs, and Settlement Administration Costs from which individual settlement payments are made to Class Members. (Settlement Agreement, Dkt. No. 94-1, Ex. A ¶ 2.34.)

Plaintiffs estimate that the average payment to each Class member, after attorney's fees, costs and Settlement Administration expenses, will be approximately $140.00. (Frank Decl., Dkt. No. 105-2 ¶ 14.)

In addition, within the calendar year 2019 (or additional time as reasonably necessary), the Plan's fiduciaries shall engage an experienced independent consultant to conduct a request for proposals ("RFP") for a service provider to provide record keeping and administrative services to the Plan. (Settlement Agreement, Dkt. No. 105-2, Ex. 2 at 3.) The Plan's fiduciaries will select a service provider after reviewing the RFP responses. (Id.)

### 3. Case Contribution Award

Class Counsel seeks a Case Contribution Award not to exceed the amount of $5,000 for each Class Representative, which will be paid from the Gross Settlement Amount. (Settlement Agreement, Dkt. No. 105-2, Ex. A ¶ 7.2.)

### 4. Attorneys' Fees and Costs

Plaintiffs filed a separate motion for an award of Attorneys' Fees and Costs. (Dkt. No. 101-1.) That motion seeks $2,625,000.00 million in attorneys' fees, which is 30% of the Gross Settlement amount and 22% of the total benefits obtained in the Settlement (i.e., the Gross Settlement amount of $8.75 million plus the injunctive relief valued at over $3 million). (Id.)

Plaintiffs also seek $52,269.50 in reimbursement of litigation expenses. (Mot.,

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Dkt. No. 101-1 at 19.)

### 5. Administrative Expenses

"The Settlement Administrator has agreed to cap its costs at $79,041.00 and the Plan's recordkeeper has agreed to cap its costs at $25,000." (Response, Dkt. No. 96, Ex. A at 5.) The Settlement Agreement provides that "Administrative Expenses" includes all fees, expenses, and costs associated with providing Settlement Notice to the Class, all related tax expenses, all expenses and costs associated with the calculations pursuant to the Plan of Allocation, all fees and expenses of the Settlement Administrator, all fees and expenses paid to the Plan's recordkeeper, and all fees and expenses paid to the Independent Fiduciary. (Settlement Agreement, Dkt. No. 105-2, Ex. A ¶ 2.2.)

### 6. Calculation of Settlement Payments

The proposed Settlement Agreement provides that "[t]he proportion of the settlement allocated to each Class Member shall be calculated, in general, as the sum of quarter-end account balances of a Class Member during the Class Period ["Total Balance"] divided by the sum of the quarter-end annual account balances of all Class Members during the Class Period," which will indicate the Class Member's "Entitlement Percentage."[2] (Id. ¶ 6.4.) "The Settlement Administrator shall next multiply each Class Member's Entitlement Percentage by the Net Settlement Amount, with the product representing the Entitlement Amount. (Entitlement Percentage x Net Settlement Amount = Entitlement Amount)." (Id.) "The Entitlement Amount for each Current Participant as of the distribution date will be deposited into the Class Member's Plan account and shall be treated as additional earnings." (Id.)

---

[2] "The reason for linking the Settlement payments to the amount invested by each Class Member is that revenue sharing resulted in Class Members with larger account balances paying more in administrative and recordkeeping expenses than Class Members with lower account balances. Under a revenue sharing arrangement, the plan administrator/ recordkeeper is compensated indirectly rather than directly. That occurs because the plan's fiduciaries agree to a percentage of the management fees paid by each plan participant to the mutual fund manager will be shared with the plan administrator/recordkeeper. Thus, those with higher account balance pay more in management fees and more to the plan administrator/recordkeeper." (Frank Decl., Dkt. No. 105-2 ¶ 12.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Current Participants will receive a credit for the settlement amount in their active account for the Plan. (Id. ¶ 6.5.2.) "Former Participants shall receive their settlement payments in the form of tax-qualified rollovers to an individual retirement account or other eligible retirement plan" if they postmark a Former Participant Claim Form at least 45 days prior to the date of the Fairness Hearing. (Id.) If a Former Participant Claim Form is not submitted by a Former Participant, that individual will receive the settlement payment directly by check. (Id. ¶ 6.4.) "[I]n the case of ambiguity or uncertainty," the check will be sent "to the address of such Former Participant as determined by the Settlement Administrator using commercially reasonable means." (Id. ¶ 6.61)

Class Members who qualify as "Current Participants," but who no longer have a balance of greater than $0 in their account ("Active Account"), will receive settlement payments in the same manner as Former Participants for purposes of receiving distributions. (Id. ¶¶ 6.5.1, 6.5.5.)

Once 28 days has elapsed following the end of the "Settlement Period," or one year after the effective date of the Settlement, any Net Settlement Amount remaining in the Qualified Settlement Fund after distributions, including costs and taxes, shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan that would otherwise be charged to the Plan's participants." (Id. ¶ 6.11.)

**7. Notice**

The Notice Plan requires direct first-class mail notice to Class Members. (Id. ¶ 2.47.) The Settlement Administrator posted a copy of the Settlement Notice on the Settlement Website created for purposes of this settlement, which it will operate: www.SIP401ksettlement.com. (Id. ¶ 12.2.) The Settlement Website includes copies of the FAC, "the Settlement Agreement and its exhibits, the Settlement Notices to the Current and Former Participants, Plaintiffs' Motion for Final Approval, the Class Representative's Motion for Attorneys' Fees and Costs, the Former Participant Claim Form, any Court orders related to the Settlement Agreement, any amendments or revisions to these documents, and any other documents or information mutually agreed upon by the Settling Parties." (Id.) The Plan's Recordkeeper will provide contact information to the Settlement Administrator. (Id. ¶ 2.47.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

### 8. No Opt-Out Process

The Settlement Agreement does not provide a manner for Class Members to opt-out. (Class Notice, Dkt. No. 105-2, Ex. 2 at 6.)

### 9. Undistributed Net Settlement Proceeds

The Settlement Agreement provides that any Net Settlement Amount remaining one year after final settlement approval "shall be paid to the Plan for the purpose of defraying administrative fees and expenses of the Plan that would otherwise be charged to the Plan's participants." (Settlement Agreement, Dkt. No. 105-2, Ex. A ¶ 6.11.)

The Court's preliminary approval order asked for clarification on how the deductions for the payments from any Net Settlement Amount would be reflected as credits toward Plan participants' payments of administrative fees and expenses of the Plan. (See Order, Dkt. No. 98.)

Defendants state that "the Plan currently charges certain periodic management fees to participants whose employers have not agreed in collective bargaining to pay those Plan fees. Such fees could be defrayed pursuant to the Settlement Agreement based on a pro rata distribution of the remaining Net Settlement Amount to the Plan accounts of current participants with outstanding fees." (Response, Dkt. No. 107 at 1.) "For instance, we understand that the Plan assesses current participants a Trust Fund Management Fee that is used to pay the costs of running the Trust Fund, including audit, consulting and legal services. Such Plan fees could be defrayed through an administrative credit that would provide additional benefit to Plan participants." (Id.)

### B. Preliminary Approval

On May 22, 2019, the Court (1) granted preliminary approval of the Settlement Agreement, (2) directed dissemination of notice to the settlement class, (3) appointed Atticus Administration, LLC ("Atticus") as the Claims Administrator, and (4) appointed Andrew Stolper, Jason M. Frank ("Frank"), and Scott H. Sims of Frank Sims & Stolper LLP, and Paul R. Wood ("Wood") of Franklin D. Azar & Associates, P.C. as Class

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Counsel for settlement purposes only.  (See Order, Docket No. 98.)

**C.    Notice**

Since receiving preliminary approval, the Court-approved Notice Plan was successfully executed by Atticus.  (See generally, Longley Decl., Dkt. No. 105-4.)  On June 12, Atticus mailed the Settlement Notice via first class mail to 43,118 Class Members.  (Id. ¶ 5.)  Of those, 41,592 were successfully noticed.  (Id. ¶ 8.)

Atticus received 953 total Former Participant Claim Forms.  (Id. ¶ 13.)  Of those, 937 were timely postmarked on or before August 11, 2019.  (Id.)

On August 16, 2019, Atticus mailed 602 "cure" letters to Class Members who filed claims that were deficient or incomplete.  (Id. ¶ 14.)

As of August 25, 2019, 295 claims have been processed as valid with rollover information provided, of which five are the result of cure responses. 63 claims have been marked invalid because the original claim submission or cure response specifically indicate the Class Members' preference to receive a check, and 595 claims remain pending cure responses.  (Id. ¶ 15.)

**D.    Objections**

As of August 11, 2019, the deadline for submitting objections, no class members objected.  (Id. ¶ 11.)

**II.  LEGAL STANDARD**

Federal Rule of Civil Procedure Rule 23(e) requires court approval for class-action settlements.  Fed. R. Civ. P. 23(e).  When the parties reach a settlement agreement before class certification, a court uses a two-step process to approve a class-action settlement.  Staton v. Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  First, the court must certify the proposed settlement class.  Id.  Second, the court must determine whether the proposed settlement is fundamentally fair, adequate, and reasonable.  Id.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

### III. Discussion

**A.    Class Certification**

The Court preliminarily certified the proposed Class in its prior order.  (Order, Docket No. 98.)  Nothing has changed in the interim that would warrant a deviation from the Court's prior ruling.  Therefore, for the reasons specified in its preliminary approval order, the Court certifies the Settlement Class for final approval of the Settlement.

**B.    Approval of the Class Settlement**

    **1.    The Fairness Factors Support Settlement Approval**

Rule 23(e) requires a district court to determine whether a proposed class action settlement is "fundamentally fair, adequate, and reasonable."  Staton, 327 F.3d at 959. For this analysis, a court typically considers the following factors: (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and the stage of the proceedings; (6) experience and views of counsel; (7) presence of a governmental participant; and (8) reaction of the class members to the proposed settlement.  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011).

        **a.    Strength of the Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

Class Counsel indicate their belief that the terms of the Settlement Agreement are fair and in the best interest of the Class in light of the facts and circumstances of the case, as well as the risk of delay and uncertainty associated with litigation, the vigorous defenses asserted by Defendants, and the nature of the "burning limits," policy, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

could lead to an ever dwindling settlement recovery as Defendants' litigation costs increase. (Dkt. No. 105-1 at 16.) In addition, while Plaintiffs believe that they were charged excessive fees for the Plan participation, Defendants dispute that they breached fiduciary duties because a multi-employer 401(k) plan "differs in terms of administration from a single-employer plan." (Frank Decl., Dkt. No. 105-2, Ex. C at 6:12-8:12.) Thus, given potential differences between multi-employer and single-employer plans, and the potential for class decertification along the way, Plaintiffs' success is uncertain such that Plaintiffs would face risk in continuing to litigate. The Court finds that this factor weighs in favor of final approval.

### b. Amount Offered in the Proposed Settlement

"It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 459 (9th Cir. 2000) (quoting Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco, 688 F.2d 615, 628 (9th Cir. 1982)). As a result, district courts should not judge the proposed settlement "against a hypothetical or speculative measure of what might have been achieved by the negotiators." In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig., 295 F.R.D. 438, 453 (C.D. Cal. 2014) (quoting Officers for Justice, 688 F.2d at 625). Instead, courts should consider the settlement in conjunction with "factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years)." Id.

Plaintiff asserts that the value of recovery in the Settlement Agreement weighs in favor of approval because "Plaintiffs obtained the full approximately $8.75 million remaining on Defendants' insurance policy *and* injunctive relief requiring an independent third-party to conduct the first request for proposal for recordkeeping and administrative services for the Plan in over 15 years." (Dkt. No. 105-1 at 17.) Since Plaintiffs could risk losing on the merits and recovering less than this amount should litigation continue, the Court finds that this factor weighs in favor of final approval.

### c. Extent of Discovery Completed and the Stage of the Proceedings

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case. The more the discovery [is] completed, the more likely it is that the parties have 'a clear view of the strengths and weaknesses of their cases.'" In re Toys R Us, 295 F.R.D. at 454 (C.D. Cal. 2014) (internal quotations omitted) (quoting Young v. Polo Retail, LLC, 2007 WL 951821, No. C-o2-4546 VRW, at *4 (N.D. Cal. Mar. 28, 2007)). Likewise, mediation suggests that the parties know their relative strengths and weaknesses. See id. at 455.

This factor weighs in favor of final approval. As the Court noted in its order granting preliminary approval, "Defendants produced over 20,000 documents for Plaintiffs' review, and Class Counsel took a deposition. Moreover, Plaintiffs point out that this amount of discovery is significant, particularly in light of the nature of the proposed settlement, in which "[e]very additional hour spent litigating the case erodes the ability of the Class to recover if successful on the merits." (Order, Dkt. No. 94-1 at 24.)

The Court finds that the parties have engaged in an appropriate amount of discovery, suggesting that the settlement is fair, reasonable, and adequate.

### d. Experience and Views of Counsel

Both parties in this action were represented by competent counsel. Defendants retained Morgan Lewis and Brockius LLP, while Plaintiff was represented by attorneys experienced in ERISA class actions. (Frank Decl., Dkt. No. 105-2 ¶¶ 2-8.) Therefore, this factor also supports final approval.

### e. Reaction of the Class Members to the Settlement

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." Nat'l Rural Telecomms., 221 F.R.D. at 529 (citations omitted); see also Barbosa v. Cargill Meat Sols. Corp., 297 F.R.D. 431, 448 (E.D. Cal. 2013) ("Where a settlement agreement enjoys overwhelming support from the class, this lends weight to a finding that the settlement agreement is fair,

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

adequate, and reasonable.").

Following the Court's preliminary approval of the Settlement, no objections were filed. (Longley Decl., Dkt. No. 105-4 ¶ 11.)

The Court finds that the reaction by Class Members to the Settlement has been positive. See Churchill, 361 F.3d at 577 (affirming district court's approval of settlement where 500 of 90,000 class members opted out (.56%) and 45 class members objected to the settlement (.05%)). Accordingly, the absence of any objections weighs in favor of final approval.

Overall, the weight of the factors supports the Court's conclusion that the Settlement is fair, reasonable, and adequate.

**C. Notice**

Rule 23(c)(2)(B) requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Similarly, Rule 23(e)(1) requires that a proposed settlement may only be approved after notice is directed in a reasonable manner to all class members who would be bound by the agreement. Fed. R. Civ. P. 23(e)(1).

In its preliminary approval order, the Court approved the plan for sending notice to potential Class Members. (Order, Docket No. 98.) As stated above, Atticus caused notice to be mailed, via first class mail, to 43,118 Class Members. (Longley Decl., Docket No. 105-4 ¶ 13.) The mailed notice effort reached 41,592 Class Members. (Id. ¶ 8.) Additionally, a website was created for the Settlement, from which Class Members were able to obtain information about the case and view documents related to the Settlement. (Id. ¶ 9.)

"Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." Rodriguez v. West Publ'g Corp., 563 F.3d 948, 962 (9th Cir. 2009)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

(internal quotation marks and citation omitted). "Settlement notices are supposed to present information about a proposed settlement neutrally, simply, and understandably[.]" Id. "That standard does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." Lane, 696 F.3d at 826.

The notice approved by the Court and implemented by Atticus satisfies this standard. Accordingly, the Court finds that the notice to the Settlement Class was fair, adequate, and reasonable.

**D.    Class Representative Incentive Award**

Courts have discretion to issue incentive awards to class representatives. Rodriguez v. West Publ'g Corp., 563 F.3d 948, 958–59 (9th Cir. 2009). The awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." Id. An unreasonable incentive award may indicate that a settlement was reached through fraud of collusion. Staton, 327 F.3d at 975.

Courts evaluate incentive awards relative to named plaintiff's efforts, considering "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation . . . and reasonabl[e] fear[s of] workplace retaliation." Id. at 977 (alterations in original) (quoting Cook v. Niedert, 142 F.3d 1004, 1016 (7th Cir. 1998)). Courts also compare the incentive awards to the total settlement by looking at "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." In re Online DVD-Rental Antitrust Litig., 779 F.3d 934, 947 (9th Cir. 2015) (quoting Staton, 327 F.3d at 977).

The Proposed Settlement provides Plaintiffs with an incentive award of $5,000. (Settlement Agreement, Dkt. No. 105-2, Ex. A ¶ 7.2.) The $5,000 comprises a relatively insignificant amount of the approximately $8.75 million Gross Fund Value, which is

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

much lower than what some courts have found excessive. See, e.g., Sandoval v. Tharaldson Emp. Mgmt., Inc., No. EDCV 08-482-VAP(OP), 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting cases and concluding that plaintiff's request for an award constituting one percent of the settlement fund was excessive). Class counsel has also indicated the average payment to each Class Member will be approximately $140.00. (Frank Decl., Dkt. No. 105-2, ¶ 14.)

Plaintiffs submitted evidence that they spent time or effort assisting in the prosecution of the action. See Vandervort v. Balboa Capital Corp., 8 F. Supp. 3d 1200, 1208 (C.D. Cal. 2014).

Plaintiffs consistently communicated with their counsel in person, by telephone and e-mail about the status of the litigation and settlement strategy. (Serrato Decl., Dkt. No. 101-5 ¶ 5; Ybarra Decl., Dkt. No. 101-4 ¶ 5.) Plaintiffs were involved in responding to written discovery and gathering responsive documents. (Id. ¶ 6.) Plaintiffs estimate they spent more than 15-25 hours each performing their duties as class representatives in this case, including communicating with counsel and reviewing documents. (Id. ¶ 7.)

Thus, the Court finds that the service award payments of $5,000 for each of the two named Plaintiffs are fair, adequate, and reasonable.

E.      **Attorneys' Fees and Costs**

   1.      **Fees**

A court may award reasonable attorneys' fees and costs in certified class actions where they are authorized by law or by the parties' agreement. Fed. R. Civ. P. 23(h). Even when parties have agreed to a fee award, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable." In re Bluetooth, 654 F.3d at 941.

In the Ninth Circuit, there are two methods of determining attorneys' fees: the percentage of the benefit method and the lodestar method. Under the percentage of the benefit method, the Court awards attorneys' fees equal to a percentage of the total value

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
|---|---|---|---|
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

provided or available to the Class. In re Hyundai and Kia Fuel Economy Litig., -- F.3d --, 2019 WL 2376831, at *16 (June 6, 2019). In comparison, under the lodestar method, the Court will multiply the number of attorney hours incurred by a reasonable hourly rate. Id. The Court may then raise or lower the lodestar based on several factors. Id.; Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975); Fischel v. Equitable Life Assurance Soc'y, 307 F.3d 997, 1007 n. 7. Courts routinely cross-check their "percentage of the fund" calculation with the lodestar method to ensure that class counsel is not overcompensated. Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 (9th Cir. 2002).

Class Counsel seeks an award of attorneys' fees in the amount of $2,625,000. (Mot., Dkt. No. 101-1 at 2.)

### a. Percentage of the Fund

In the Ninth Circuit, the benchmark for fee awards in common fund cases is 25% of the common fund. In re Bluetooth, 654 F.3d at 942 ("Where a settlement produces a common fund for the benefit of the entire class, . . . courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record for any 'special circumstances' justifying a departure."). The percentage may be adjusted according to several factors, including: (1) the results achieved; (2) the risk involved in undertaking the litigation; (3) the generation of benefits beyond the cash settlement fund; (4) the market rate for services; (5) the contingent nature of the fee; (6) the financial burden to counsel; (7) the skill required; (8) the quality of the work; and (9) the awards in similar cases. Vizcaino, 290 F.3d at 1048–49; Six Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301, 1311 (9th Cir. 1990).

Here, Plaintiffs' counsel seek an award of 30% of the common fund, or approximately 22% of the overall value of the Settlement, if the non-reversionary common fund ($8.75 million) is combined with the value of the injunctive relief. (Mot., Dkt. No. 101-1 at 10-11.) This amount, if the Court only looks at the value of the common fund, is above the Ninth Circuit's established benchmark. "[C]ourts in this circuit, as well as other circuits, have awarded attorneys' fees of 30% or more in complex class actions" In re Heritage Bond Litig., No. 02-ML-1475, 2005 WL 1594403, at *19,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

19 n.14 (C.D. Cal. June 10, 2005) (collecting cases). Plaintiffs' counsel contend that the award is appropriate in this case. For the following reasons, the Court agrees.

> *i.   Results Achieved*

"The result achieved is a significant factor to be considered in making a fee award." Id. (citing Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)); Vizcaino, 290 F.3d at 1048 ("Exceptional results are a relevant circumstance."); In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."). The Court found that the settlement is fair, adequate, and reasonable. Class Counsel obtained a policy-limits settlement and injunctive relief. (Mot. at 11.) The Court finds that, overall, the result weighs in favor of the requested award.

> *ii.   Risks Involved*

Another significant factor to be considered in determining attorney fees is the risk that counsel took of "not recovering at all, particularly [in] a case involving complicated legal issues." In re Omnivision Techs., 559 F. Supp. 2d at 1046–47; Vizcaino, 290 F.3d at 1048; In re Heritage Bond, No. 02-ML-1475, 2005 WL 1594389, at *14 (C.D. Cal. June 10, 2005) ("The risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of costs, is a factor in determining counsel's proper fee award."). As explained above, Plaintiffs undertook significant risks in pursuing this litigation. Therefore, this factor supports the requested award.

> *iii.   Skill of Counsel and Contingent Fees*

"The single clearest factor reflecting the quality of class counsels' services to the class are the results obtained." Id., at *12 (quoting Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 149 (E.D. Pa. 2000)). Class Counsel has competently litigated this case, diligently investigating and developing the claims. The settlement was not reached lightly. Cf. Navarro v. Servisair, 2010 WL 1729538, at *3 (N.D. Cal. Apr. 27, 2010) (finding proposed award of 30 percent of settlement fund unjustifiably departed from benchmark due in part to speed with which parties reached a settlement). And, Class

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

Counsel have extensive experience in class actions and complex litigation. (Mot., Dkt. No. 101-1 at 13.) Therefore, this factor supports the requested award.

Attorneys also are entitled to a larger fee award when their compensation is contingent in nature, as here. See Vizcaino, 290 F.3d at 1048–50; see also In re Omnivision Techs., 559 F. Supp. 2d at 1047. "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for contingency cases." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994). Therefore, this factor also supports the requested award.

            *iv.*    *Results in Similar Cases*

The requested fee is generally in line with awards made in similar sized common fund class actions litigated in California. See, e.g., Vasquez, 266 F.R.D. at 492 (detailing cases awarding one-third of common fund and awarding counsel one-third of common fund in case with total recovery of $300,000); see also Craft v. Cty. of San Bernardino, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (noting that cases of under $10 million often result in fees about 25%). Therefore, this factor supports the requested award.

            *v.*    *Reaction of the Class*

The Court may also consider the reaction of the class to the proposed fee award. In re Omnivision Techs., 559 F. Supp. 2d at 1048; In re Heritage Bond, 2005 WL 1594389, at *15 ("The presence or absence of objections from the class is also a factor in determining the proper fee award."). There were no objections. Therefore, this factor supports the requested award.

In sum, the Court finds that the factors in this case support Class Counsel's requested attorneys' fees award. The Court will next perform a lodestar cross-check to ensure the reasonableness of the percentage award.

    **B.**    **Lodestar Cross-Check**

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

"Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." Vizcaino, 290 F.3d at 1050; In re Omnivision Techs., 559 F. Supp. 2d at 1048. As noted above, the Ninth Circuit encourages courts to cross-check the reasonableness of a fee award determined using the percentage method with the lodestar method. The asserted lodestar for Class Counsel is $1,441,875.50. (Frank Decl., Dkt. No. 101-2 ¶ 34.) Class Counsel spent approximately 1,893 hours on this litigation. (Id.) Class Counsel's fee request currently includes a lodestar multiplier of 1.82. (Id.)

"The first step in the lodestar analysis requires the district court to determine a reasonable hourly rate for the fee applicant's services. This determination [involves] examining the prevailing market rates in the relevant community charged for similar services by lawyers of reasonably comparable skill, experience, and reputation." Cotton v. City of Eureka, 889 F. Supp. 2d 1154, 1166 (N.D. Cal. 2012) (internal quotation marks and citation omitted); see also Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008). "The fee applicant has the burden of producing satisfactory evidence . . . that the requested rates are in line with those prevailing in the community." Jordan v. Multnomah Cnty., 815 F.2d 1258, 1263 (9th Cir. 1987). The fee applicant may provide affidavits from the attorneys who worked on the present case, as well as affidavits from other area attorneys or examples of rates awarded to counsel in previous cases. See Bellinghausen v. Tractor Supply Co., 306 F.R.D. 245, 262 (N.D. Cal. 2015); see also Parkinson v. Hyundai Motor Am., 796 F. Supp.2d 1160, 1172 (C.D. Cal. 2010) ("Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates.").

The contingent nature of the case supports the fee award here. Attorneys are entitled to a larger fee award when their compensation is contingent in nature. See Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002); see also In re Omnivision Techs., Inc., 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008). "It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for . . . contingency cases." In re Wash. Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1299 (9th Cir. 1994). This ensures competent representation for plaintiffs who may not otherwise be able to afford it. Id. Here, Class Counsel faced significant risk from

Case 8:17-cv-02091-JVS-E Document 109 Filed 09/30/19 Page 19 of 20 Page ID #:3509

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 17-2091 JVS (Ex) | Date | September 30, 2019 |
|---|---|---|---|
| Title | Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al. | | |

contingent fee litigation because they expended significant time and money without guaranteed payment. (Mot., Docket No. 101-1 at 14, 16.)

Here, class counsel contend that their hourly rates are $900 (Jason Frank), $875 (Andrew Stolper) and $875 (Scott Sims). Class counsel provide detailed information regarding their positions, experience levels, and locations, as well as the customary rates charged in the area. (Frank Decl., Dkt. No. 101-2 ¶ 34.) They contend that their hourly rates are consistent with their experience and prevailing market rates. (Id.) Based on this information, the Court finds the hourly rates reasonable.

Next, the Court examines whether the number of hours class counsel expended on the litigation was reasonable. To calculate the Lodestar, Class Counsel reviewed and included their timekeeping records. (Id.) The Court finds that the number of hours expended was reasonable.

Accordingly, on balance, the Court finds that awarding 30% of the Settlement Amount in attorneys' fees is justified. The Court awards Class Counsel $2,625,000 in attorneys' fees.

### 2. Costs

Class Counsel incurred $52,269.50 in case-related costs. (Mot., Dkt. No. 101-1 at 3.)

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." In re Omnivision Techs., 559 F. Supp. 2d at 1048. Class Counsel provide adequate documentation of these expenses in expense ledgers accompanying their declarations. (Mot., Docket No. 101-2, Ex. 3.) Therefore, the Court awards $52,269.50 for reimbursement of reasonable expenses.

### IV. CONCLUSION

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. SACV 17-2091 JVS (Ex)     Date September 30, 2019

Title     Felipe Ybarra, et al. v. Board of Trustees of Supplemental Income Trust Fund, et al.

       For the foregoing reasons, the Court **grants** the motion for final approval of the class settlement and the Class Representative incentive award. The Court **grants** the motion for attorneys' fees for $2,625,000 and **grants** the award for $52,269.50 in case-related costs.

       **IT IS SO ORDERED**

       :    10

Initials of Preparer    lmb